```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

```
CORRY G. NIX,

                Plaintiff,
                                        DECISION and ORDER
     -vs-                               No. 6:14-cv-06395(MAT)

THE CITY OF ROCHESTER, ROCHESTER
CITY POLICE DEPARTMENT, ROCHESTER
CITY POLICE OFFICER MICHAEL
JOHNSON, MICHELLE BROWN, EBONY
ARTCHETCKO, FRYE, RIVERA, WALDO and
JOHN DOE(s), intended to be another
Rochester City Police Officer(s)
whose name(s) is/are not Known to
the Plaintiff, and NELSON
JUSTIANO-DEJESUS,

                Defendants.
```

## I. Introduction

Represented by counsel, Corry G. Nix ("Nix" or "Plaintiff"), instituted this action against the City of Rochester ("the City"), the Rochester Police Department ("RPD"), various named RPD officers (Ebony Archetko, Michelle Brown, Thomas Frye, Michael Johnson, Rafael Rivera, and Richard Waldo), and one or more unnamed RPD officers (collectively, "the City Defendants"), and Nelson Justiano-DeJesus ("Justiano"), a private citizen, alleging violations of his constitutional rights under 42 U.S.C. § 1983, as well as state law causes of action sounding in tort.

## II. Factual Background and Procedural Status

At issue in the Complaint is constitutionality of two arrests of Nix on the mornings of July 16, 2013, and July 18, 2013. Both arrests concern Nix's actions in regard to co-defendant Justiano, the neighbor of Nix's daughter, Shana Nix ("Shana"). Shana resided with her infant child in one side of a duplex house located at 127-129 Anthony Street in the City of Rochester. Shana lived at #129; Justiano and members of his family lived at #127.[1] Plaintiff asserted claims of excessive force, false arrest, and malicious prosecution against the named RPD officers who participated in these arrests.

The City Defendants moved for summary judgment dismissing the Complaint in its entirety. The Court granted the summary motion in full and dismissed the Complaint with prejudice (Dkt #20).

Nix subsequently filed a Motion for Reconsideration (Dkt #22). The City Defendants filed a Declaration (Dkt #23) and Memorandum of Law in Opposition (Dkt #23-1), and Nix filed a Reply (Dkt #24). For the reasons discussed below, the Motion for Reconsideration is denied.

---

[1] Additional factual background will be provided as necessary in the Court's discussion of Plaintiff's arguments for reconsideration.

**III. Plaintiff's Motion for Reconsideration**

    **A.    Applicable Legal Principles**

The Second Circuit has explained that "[t]he standard for granting a [motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations and citations omitted).

    **B.    Overview of the Parties' Arguments**

Nix does not assert that there has been an intervening change in controlling law, or that new evidence is available. Instead, he contends that reconsideration is warranted because the Court committed clear error in basing its probable cause determination on certain material facts he asserts are disputed, and on findings he contends were based on inadmissible evidence. Nix asserts that the Court's Decision and Order is based what he characterizes as erroneous "findings". These "findings" are as follows:

> 1. [t]hat Plaintiff confronted Justiano-DeJesus and his family;
>
> 2. [t]hat Plaintiff's argument with Justiano-DeJesus and his family escalated;
>
> 3. [t]hat a bystander called 911 and reported that things were getting heated;
>
> 4. [t]hat Justiano-DeJesus called 911 to report that he received threats by Plaintiff against him and his family;
>
> 5. [t]hat "according to officers, Plaintiff got into and out of his wife's vehicle several times; each time he was directed to get back into the vehicle and to avoid having any contact with Justiano-DeJesus or his family";
>
> 6. [t]hat Plaintiff got out of his vehicle and was recording Justiano-DeJesus, who was on the porch of the Anthony Street duplex, with his cell phone camera";
>
> 7. [t]hat "Justiano-DeJesus later swore out a complaint charging the Plaintiff with a violation of Harassment in the Second Degree under New York Penal Law ("P.L.") § 240.26(1). The complaint alleged that Plaintiff said to Justiano-DeJesus, "I'm gonna shoot you up" and "I'm gonna get you[,]" which cause[d] [him] to feel threatened and alarmed"; and
>
> 8. [t]hat Plaintiff's "admission to Officer Archetcko supported his arrest and the charge of second degree harassment. . . ."

(Plaintiff's Memorandum of Law ("Pl's Mem.") (Dkt #22-2) at 1-2). Of the so-called "findings" identified above, numbers 1, 2, 3, 4, 7, and 8 pertain to the arrest on July 16, 2013; numbers 5 and 6 pertain to the arrest on July 18, 2013.

The RPD Defendants counter that Nix's interpretation of the basis for this Court's Decision and Order granting summary judgment is inaccurate, and that his claims regarding supposedly disputed fact issues are contrary to his own deposition testimony. (RPD

Defendants' Memorandum of Law in Opposition ("Defs' Opp.") (Dkt #23-2) at 2-3).

**C. Discussion**

**1. The Hearsay Argument**

Nix claims that "findings" 3, 4, and 5 are based on inadmissible hearsay, namely, the 911 call records from the mornings of July 16th and July 18th. Notably, in his original opposition papers, Nix did not raise any challenges to the exhibits submitted by the RPD Defendants, which included the 911 call records. This argument is not properly made on reconsideration, as "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple[.]" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) (citations omitted).

In any event, Plaintiff is mistaken that 911 calls are, categorically, inadmissable hearsay, "with no apparent exception[.]" (Pl's Mem. (Dkt #24-1) at 2). While 911 calls may not qualify under the business record exception to the rule against hearsay, e.g., People v. Smith, 557 N.Y.S.2d 424 (2d Dep't 1990) (citation omitted), they have been held admissible under other exceptions to the hearsay rule such as the present sense impression and excited utterance exception. See, e.g., People v. Conyers, 777 N.Y.S.2d 274, 277 (Sup. Ct. 2004) (holding that 911 calls by

-5-

[witness of crime] "fall within the perimeters of the 'excited utterance' exception to the hearsay rule inasmuch as there was no opportunity for [her] to reflect and falsify her account").

### 2. "Findings" 1, 2, 3, 4 & 8 (Regarding the July 16, 2013 Arrest)

With regard to "finding" 1, Nix's own deposition testimony established that he did have a confrontation with Justiano and his family on July 16, 2013. For instance, Nix testified that when he responded to his daughter's requests for help on July 16th, he "knocked on the door next door and where—the guy who—who was introduced as Nelson Justiano, where he lives, we knocked on the door and some—it was this older relative that was living with him [i.e., Justiano]. He came out and we were asking him did *you guys* break in." (Deposition of Corry Nix ("Nix Dep.") at 34:17-2 (Dkt #13-2), Exhibit ("Ex.") B to Declaration of Christopher Noone, Esq. ("Noone Decl.") (Dkt #13-1) (emphasis supplied)); see also Nix Dep. at 36:8-11 ("The older guy [who was living with Justiano], he came out. And I was asking him did *you guys* break in to my daughter's house and whatnot.") (emphasis supplied). It is clear that Plaintiff was accusing Justiano and his family members of stealing from his daughter.

As to "finding" 2, the Court's statement that the interaction between Plaintiff and Justiano escalated in intensity was background information, and was not a material factor in the Court's decision. In any event, Plaintiff's deposition testimony

-6-

supports the Court's characterization of the confrontation as becoming heated. For instance, during his deposition, Plaintiff responded affirmatively when asked if his conversation with Justiano's family member became loud, stating, "[s]omewhat loud. Somewhat loud. My daughter, she was upset, so she was screaming. . . ." (Nix Dep. at 36:3-6).

As to "findings" 3 and 4, there can be no material dispute that multiple 911 calls were made on July 16, 2013, with regard to the confrontation between Plaintiff and his neighbors. With regard to "finding" 3 in particular, the Court's reference to the 911 call made by a bystander was incidental to this Court's probable cause determination and was merely offered as information to complete the narrative. Moreover, the bystander's description of the confrontation as "becoming heated" was corroborated by Plaintiff's admission, discussed above, that his confrontation with Justiano was "somewhat loud" and that his daughter was "screaming."

With regard to "finding" 4, there likewise can be no material dispute that the putative victim, Justiano, called 911 to report that he received threats by Plaintiff against him and his family, and that in that call, he accurately described Plaintiff, what he was wearing, his vehicle and license plate number, and the direction he was last seen heading. (See Transcripts of 911 Calls, attached as Ex. D (Dkt #13-2) to Noone Decl. (Dkt #13-1), p. 55 of 64 (Justiano reported to the 911 operator that an "unknown black

male in a long-sleeved white t-shirt" was "outside threatening him w/a gun" and that the "susp[ect] came in a red truck")).

### 3. "Finding" 7 and the Falsified Evidence Argument (Regarding the July 16, 2013 Arrest)

Plaintiff contends that the criminal complaint signed by Justiano was falsified by the RPD, and therefore was not properly relied on by the Court in its determination that probable cause existed on July 16, 2013, to arrest Plaintiff for Harassment in the Second Degree (P.L. § 240.46(1)). Although Plaintiff has identified a potential irregularity in Officer Thomas Frye's completion of the Information/Complaint (Ex. G to Second Declaration of Christopher Noone ("2nd Noone Decl.") (Dkt #23), insofar as Frye testified that he signed his name as a witness to the signature of the complainant even though he did not personally witness Justiano signing the Information/Complaint, Plaintiff has not established that the allegations in the Information/Complaint were "falsified." Moreover, as discussed further below, the propriety of the Court's probable cause determination does not stand or fall based on this potential procedural irregularity.

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (citations omitted). However, a signed information

or complaint is not a prerequisite to a valid arrest, for "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (citation and internal quotations omitted); see also, e.g., Donovan v. Briggs, 250 F. Supp.2d 242, 251-52 (W.D.N.Y. 2003) ("Both New York State and federal courts have held that a purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest.") (collecting cases). "The veracity of citizen complain[an]ts who are the victims of the very crime they report to the police is assumed." Miloslavsky v. AES Eng'g Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (citing Adams v. Williams, 407 U.S. 143, 146-47 (1972)), aff'd, 993 F.2d 1534 (2d Cir. 1993). Furthermore, the probable cause assessment "is to be made on the basis of the collective knowledge of the police rather than on that of the arresting officer alone." United States v. Lavallee, 517 F.2d 750, 753 (2d Cir. 1975).

Here, RPD Officer Michelle Brown testified that on the morning of July 16, 2013, she was "responding to a call for a male with a gun on Anthony Street[.]" (Deposition of Michelle Brown ("Brown Dep.") (Dkt #16-8) at 6:8-21). Brown recalled that there were "multiple calls that came in [regarding this incident] that were all duped together." (Id. at 7:9-10). Brown's "job card" from the

police dispatcher, which contained the words used in the radio transmission to her, stated as follows: "Unknown male black last seen wearing a white shirt outside threatening him with a gun. Suspect came in a red truck[,]" "a red Chevy, license plate FAM3482." (Id. at 21:9-24). Brown testified that, according to the job card, the 911 caller who reported being threatened by a black male in a white shirt "was a Nelson Justiano." (Id. at 21:25-22:2-8). Brown intercepted a vehicle matching the description in the 911 dispatch on Post Avenue, a few blocks away from Anthony Street, and ordered the driver (later identified as Nix) to get out of his vehicle. Officers Frye and Ebony Archetcko arrived at the scene moments later in response to the man-with-a-gun dispatch, and assisted Officer Brown in handcuffing Plaintiff. (Deposition of Thomas Frye ("Frye Dep.") (Dkt #16-10) at 12-17; Deposition of Ebony Archetcko ("Archetcko Dep.") (Dkt #16-7) at 6-11).

Archetcko then went over to 127-129 Anthony Street, and spoke to the victim (Justiano). Archetcko did not recall the name of the victim at the time of her deposition, but she stated that determined who the victim was based on the Anthony Street address to which she originally had been dispatched. (Archetcko Dep. at 17-18). Archetcko knew that the victim would be located on the left-hand side of the duplex at 127-129 Anthony Street. (Id. at 18). Archetcko said that the victim related to her that Plaintiff told him that he had a gun; the victim did not actually see Plaintiff

with a gun. (Id. at 18-19). Archetcko then went back to the Post Avenue scene, where Plaintiff was being detained, to relay to Frye the information she had gathered from the victim. (Id. at 21-22). Using the information provided by Archetcko, Frye then completed the narrative portion of the criminal complaint. Frye testified that he asked Archetcko what were Justiano's "exact words" so he could complete the form. (Frye Dep. at 32-35). Archetcko told him that Justiano said that Plaintiff told him, "'I'm going to shoot you up'" and "'I'm going to get you.'" (Id. at 35:4-8).

Archetcko recalled that Plaintiff was brought from the Post Avenue scene to the Anthony Street scene for a show-up with Justiano. Brown testified she also spoke to Justiano at the Anthony Street scene. (Brown Dep. at 22,[2] 24-26). Brown commented that since they did not locate a gun in the course of their investigation, Plaintiff was "arrested for harassment and not menacing, which would have been a gun charge." (Id. at 27:3-6).

Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). Here, Officers Brown, Archetcko, and Frye had

---

2
Page 23 of Brown's deposition transcript is missing from the copy supplied by the City Defendants to the Court.

probable cause to believe that Plaintiff committed the crime of second-degree harassment[3] based on the dispatch calls, the victim's statements to Archetcko which she relayed to Frye, and Brown's investigation at the scene. See Smith v. City of New York, 388 F. Supp.2d 179, 185 (S.D.N.Y. 2005) (finding that officer "had probable cause to arrest Smith at the Hospital on August 4, 2001 based on [the victim]'s in-person identification of Smith and her description of the alleged rape" and, apart from the victim's identification of Smith and her description of the alleged assault, the officer relied on information from other police personnel concerning the events on the dates at issue, which constituted further probable cause under the collective knowledge doctrine).

"[E]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he or she can establish an 'arguable probable cause' to arrest." Escalera, 361 F.3d at 743. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. Although the Court did not reach the issue of qualified immunity in its

---

[3] "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: 1. [h]e or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same. . . ." N.Y. PENAL LAW § 240.26 (1).

-12-

prior Decision and Order, the Court finds that at the very least, on the present record, it was objectively reasonable for the RPD officers to believe that probable cause existed, and that officers of reasonable competence could disagree on whether the probable cause test was met. See Smith, 388 F. Supp.2d at 186.

### 4. "Findings" 5 and 6 (Regarding the July 18, 2013 Arrest)

"Findings" 5 and 6 concern Plaintiff's arrest on July 18, 2013, for violating the order of protection obtained by Justiano against him. Plaintiff admits that Justiano obtained an order of protection against him which, inter alia, directed Plaintiff to "stay away from" Justiano, his home, his business, etc., and to have "no contact whatsoever" with Justiano. (Order of Protection, Ex. P (Dkt #13-4) to Noone Decl. (Dkt #13-1)). The order of protection indicates that it was served on Plaintiff in court, and his signature appears at the bottom of it. (Id.).

On July 18, 2013, RPD Officers Michael Johnson and Rafael Rivera responded to 127-129 Anthony Street for reports of "neighbor trouble." When the arrived at the scene, Nix's vehicle was parked in the middle of Anthony Street, "verging on the south curb," which is where the residents of the duplex at 127-129 Anthony Street were located. (Deposition of Michael Johnson ("Johnson Dep.") at 8-9, Ex. C (Dkt #13-2) to Noone Decl. (Dkt #13-1). Officer Brown, who had been present on July 16th, also responded to the scene. Officer Johnson testified that he was aware that Plaintiff was the subject

of a "stay away" order of protection regarding the residents at 127 Anthony Street (Justiano and his family). Officer Johnson observed Plaintiff get into and out of his car several times. Officer Johnson asked him to get back into his vehicle as well as to leave the area, but Plaintiff did not comply. (Id. at 8, 11-12). Then Plaintiff "began walking towards the sidewalk and holding up a -- his phone videotaping the people that were on the porch." (Id.). At that point, Officer Johnson arrested him for Criminal Contempt in the Second Degree (P.L. § 215.50(3)) for violating the order of protection.

"[C]riminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and he willfully disobeys it." Holtzman v. Beatty, 468 N.Y.S.2d 905, 907 (2d Dep't 1983) (citations omitted). The existence and clarity of the order are not in dispute; nor is there a dispute as to Plaintiff's awareness of order's contents. See People v. Williams, 696 N.Y.S.2d 369, 370 (Crim. Ct. 1999) ("A defendant has knowledge of an order when he has been duly served with the order or was present in court and heard it issued.") (citation omitted). When asked at the PSS hearing if he knew the terms of the order of protection, he testified, "Yeah. I'm not supposed to go to like his house, his job, say anything, like menace. I'm not supposed to threaten him, or do anything. Send anything by a third party." (PSS Hearing Testimony of Corry G. Nix ("Nix Hrg. Test.") at 27, Ex. J

(Dkt #13-3) to Noone Decl. (Dkt #13-1). Nix also testified that as soon as he "got out the car, [Officer] Brown was saying that [he] could be arrested for even just being there[.]" (Id.).

Plaintiff attempts to create material issues of fact concerning the probable cause finding on the basis that there are alleged disputes about the number of times he got into and out of his vehicle, and the identity of the police officer who gave him instructions to get back into the car or wait down the street. These alleged issues of fact are not material and do not detract from the finding that the officers had probable cause, or at a minimum, arguable probable cause to arrest Plaintiff for second-degree criminal contempt. See, e.g., Williams v. Suffolk Cty., 284 F. Supp.3d 275, 286 (E.D.N.Y. 2018) (victim informed arresting officer that the plaintiff had violated the order of protection by approaching her twice, coming within one foot of her the second time, and taking photographs of her; finding that "this alone gave Officer Jeheber probable cause to arrest the [p]laintiff").

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Reconsideration (Dkt #22) is **denied.**

**SO ORDERED.**

S/Michael A. Telesca
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: April 12, 2018
        Rochester, New York